[Crim. No. 1253.   Third Appellate District.—March 30, 1933.]

THE PEOPLE, Respondent, v. H. B. JONES, Appellant.

Harry M. McKee, S. Luke Howe and O. F. Meldon for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was charged with the murder of his wife. He was convicted of manslaughter. On appeal he contends that he shot his wife in an effort to protect her chastity by shooting at her inebriated companion while they were fleeing from his presence after a drunken debauch in which all three individuals participated.

It is asserted the evidence fails to support the judgment; that the court erred in refusing to give certain instructions to the jury which were offered by the defense; that a dying declaration of the deceased was received in evidence without preliminary proof that it was made *in extremis,* and that the district attorney was guilty of prejudicial misconduct in stating to the jury in his closing argument that he believed the defendant was guilty of murder.

The defendant and his wife were living in the Mariposa school building near Grass Valley in Nevada County. In the afternoon of Sunday, the twenty-second day of August, 1932, an associate by the name of Edward Ryan appeared and spent the afternoon and part of the night drinking liquor with them. They were well acquainted, having previously picked fruit together. Ryan brought a bottle of whisky with him. Several times the defendant and Ryan drove to Grass Valley and purchased more whisky. Ryan says they drove to town for liquor two or three times. The defendant admits they went for whisky once. He claims that he drank very little liquor. Both Ryan and deceased became intoxicated. The defendant and his wife had previously lived in harmony. Ryan's story of the shooting is very vague. He was evidently quite drunk. The defendant claims that his wife had been drinking with Ryan periodically throughout the entire time they spent together on this occasion and that she was very drunk. There is no evidence that he protested against her drinking. About 2 o'clock in the morning he claims to have reclined on a

couch pretending to sleep; that Ryan was making love to his wife in a maudlin fashion; that after talking together in a low tone of voice and concluding that he had gone to sleep, they slipped out the back door. The defendant arose and listening at the door he heard them talking near by. He suddenly opened the door and saw his wife in the embrace of Ryan. They were leaning against an upright post supporting the roof of the porch. He claims to have cursed Ryan and to have rushed out, striking at him. The couple started to run across an open space near the house. Ryan held Mrs. Jones by the hand. She was wobbling as they ran. The defendant entered the house and grasping a loaded shotgun, he returned to the open doorway, claiming that he intended to "sprinkle his back with shot". It was moonlight and the defendant could see the fleeing couple fairly well. They had reached a point about thirty or forty steps from the house when the defendant fired. Mrs. Jones received the charge of shot in her right side, face, breast and abdomen. Sixty shot took effect in her body. She fell screaming to the ground. Ryan received only two or three shot in the neck and face. They lodged just beneath the skin. He easily picked them out himself. He was not seriously injured. From this fact, it appears evident that he must have been some distance beyond Mrs. Jones at the time the gun was fired. He ran to his automobile and tried to start it, but failed. He then fled from the scene.

The defendant immediately threw his gun down and went to the assistance of his wife. He evidently regretted his act and grieved over her injuries and subsequent death. He was unable to carry her to the house, although she weighed but 120 pounds. He brought a quilt from the house and placed her upon it. He then hastened to the home of a neighbor and arousing two young men he sent them to town for a doctor. He did not tell the boys how the shooting occurred. A doctor soon arrived. In the morning Mrs. Jones was removed to the hospital at Grass Valley. She died five days later. Prior to her death Mrs. Jones made a dying declaration in which she asserted that her husband declared, "I will shoot you,—He run in the house and got the shotgun—and he shot me."

██ The verdict and judgment finding the defendant guilty of manslaughter are adequately supported by the evidence. ██ No error was committed in refusing to give the challenged instructions which were offered by the defendant. They apply to the lawful right of a husband to use necessary force to protect his wife against physical violence or an assault. The proper legal principles which are contained in these instructions were adequately covered by other instructions which were given by the court to the jury.

██ The preliminary proof was sufficient to show that the dying declaration of the deceased was made by her *in extremis* when she believed that death was imminent, and it was properly admitted in evidence. A dying declaration is admissible in evidence only upon preliminary proof that it was made by the deceased under the belief that death is impending. In ascertaining that the deceased considers himself to be *in extremis* at the time the statement is made, oral evidence of the surrounding circumstances may be received including his verbal declarations regarding his condition and the nature and seriousness of his injuries. (13 Cal. Jur. 719, secs. 90, 91.) In the present case the declaration was taken in the hospital under the direction of the district attorney three or four days before the death of Mrs. Jones. It was reduced to writing and signed by her. It contains the following dialogue concerning her expectation of immediate death: "Q. *At this time* do you believe you are going to die? A. Yes sir. Q. You are willing to make a dying statement as to how this shooting occurred? A. Yes. Q. And to sign the statement after it is made? A. Yes. . . . Q. What did he do, your husband? A. He said 'I will shoot you, . . . ' He ran in the house and got his shot gun, and I started to run. Q. You started to run? A. Yes sir, and he shot me." Regarding the belief of the deceased that she was about to die, the defendant testified to the following conversation which he had with her: "I was telling her . . . I didn't intend to shoot her. She said 'I know.' I said 'I don't think it is bad.' She said 'Yes, it is bad . . . I am afraid I am going to die, goodbye, sweetheart, goodbye.'" She did in fact die three or four days later. The evidence of belief that death was im-

pending is adequate to authorize the admission of the dying declaration in evidence.

The appellant contends the district attorney was guilty of prejudicial misconduct in declaring in his argument to the jury that he believed the defendant was guilty of murder. We are of the opinion the record may not be reasonably so construed. Just before the arguments of counsel were commenced, at the request of counsel for the defendant, the court instructed the jury as follows: "The jury understands that remarks of counsel made during the course of argument or otherwise are not evidence at all. They are simply statements made with which you have nothing to do in considering the case after you retire." In beginning his argument the district attorney said: "There is nothing personal in the matter. I represent you and *upon you rests the burden of determining whether this man has committed the crime under the facts shown or not.*" The court also fully instructed the jury they could convict the defendant only upon competent testimony of his guilt beyond all reasonable doubt. In closing his argument to the jury the district attorney made the following statement which is challenged by the appellant as prejudicial. He said: "All I ask of you is that when you go into the jury room that you discuss this matter deliberately and without passion and without sentiment and arrive at a verdict which you think is just to the state and just to this defendant, but as we stated in the beginning we are of the opinion and ask that in the verdict rendered that this defendant be found guilty of the crime of murder of which he is charged." This sentence evidently refers to the opening statement above quoted, in which the district attorney told the jury, "Upon you rests the burden of determining whether this man has committed the crime *under the facts shown or not.*" The challenged statement may reasonably be construed to mean, "As we stated in the beginning we are of the opinion the evidence proves the guilt of the defendant and ask that in the verdict rendered that this defendant be found guilty of the crime of murder of which he is charged." This construction of the foregoing statement to which the defendant objected must have been in accord with the view of the trial judge when he said that he did not understand that it constituted misconduct. The

record contains no evidence of undue zeal on the part of the district attorney in the prosecution of the case. We are satisfied his argument was not prejudicial. The defendant appears to have had a fair and impartial trial. Under the facts of the case the defendant may be deemed to be fortunate that the jury found him to be guilty of manslaughter only. The record contains no reversible error.

The order and the judgment are affirmed.

Plummer, J., and Pullen, P. J., concurred.